UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN DEMEAN HARRIS BEY,

    Petitioner,                                                                         Civil No. 05-CV-40138-FL
                                                                         HONORABLE PAUL V. GADOLA
v.                                                                    UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

    Respondent,

_____/

**OPINION AND ORDER SUMMARILY DISMISSING
PETITION FOR WRIT OF HABEAS CORPUS**

Shawn Demean Harris Bey, ("petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction on one count of first-degree murder, M.C.L.A. 750.316, one count of second-degree murder, M.C.L.A. 750.317, and two counts of possession of a firearm in the commission of a felony [felony-firearm], M.C.L.A. 750.227b. For the reasons stated below, petitioner's application for writ of habeas corpus will be summarily dismissed pursuant to Rule 4 of the Rules Governing § 2254 cases.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Detroit Recorder's Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are

1

presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> Police and firefighters discovered the burned body [of] Tammy Dzurisin in the trunk of her car shortly before midnight on August 18, 1995, near the intersection of Bagley and Wabash in Detroit. Expert testimony indicated that Dzurisin had been shot in the head, but then died from the inhalation of smoke and soot.
>
> The following day, police found Stacey LeClaire, suffering from a bullet wound to the neck but still alive, in a field a short distance from where the Dzurisin's car had been found. Police testified that LeClaire managed to say that "Shawn" had shot her. LeClaire later died from her injuries.
>
> At trial, the prosecution presented evidence that defendant and Dzurisin were involved in a romantic relationship. Two days after the relationship ended, defendant drove Dzurisin and LeClaire to a secluded area, shot both women, placed Dzurisin in the trunk of the car, poured gasoline over her, and set her and the car ablaze. The defense maintained that defendant was innocent of the crimes, that the police had coerced defendant into signing a fabricated confession, and, alternatively, that defendant acted without satisfying the premeditation requirement for first-degree murder. The jury found defendant guilty of first-degree murder in the death of Dzurisin, and of second-degree murder in the death of LeClaire.

*People v. Harris,* 1998 WL 1990854, *1 (Mich.Ct. App. July 28, 1998).

Petitioner's conviction was affirmed on appeal by the Michigan Court of Appeals. *Id.* Petitioner did not file an application for leave to appeal with the Michigan Supreme Court. Petitioner did file two state petitions for writ of habeas corpus, both of which were denied. *See Harris v. Warden of Mound Correctional Facility Andrew Jackson,* 96-000998 (Third Circuit Court, Criminal Division, Oct. 19, 2004); *Harris-Bey v. Jackson,* 04-430182-AH (Wayne County Circuit Court, Nov. 9, 2004). Petitioner has not appealed either decision to the Michigan appellate courts.

The Court notes that after filing his original petition on May 4, 2005, petitioner filed a motion to supplement the petition on May 20, 2005. The supplement added a fourth argument. The Court will grant the motion to amend and will consider all four arguments. Petitioner seeks habeas relief on the following four grounds in his application and supplement, which the Court quotes as follows:

> I. Whether petitioner was deprived of his valued right under the Fourteenth Amendment because the State of Michigan had no authoritative jurisdiction to try, convict, and imprison him in violation of his diversity of citizenship safeguard under the US Constitution requiring release from the illegal restraint of respondent?
>
> II. Whether petitioner was deprived of Fourteenth Amendment right to receive due process of law where the State of Michigan tried, convicted, and imprisoned him on an unconstitutional sentence contrary to the Michigan's constitution, which only allows indeterminate sentences and no authority was granted to the Michigan Legislature to enact determinate sentences under Const. 1963, Art. 4, § 5, in violation of the Supremacy Clause of the US Constitution?
>
> III. Whether petitioner was deprived of his liberty and a right to due process of law where his trial judge, his trial attorney, and the local prosecutor were never licensed to practice law in the State of Michigan, which constitutes a fraud upon the state's judiciary?
>
> IV. Petitioner is entitled to immediate release from custody where petitioner was deprived of his liberty, due process of the law, and a fair trial, when the state court of Michigan unlawfully, fraudulently, and by threat, duress, coercion and brute force assumed subject matter jurisdiction and thereby accused, tried, and convicted petitioner of violating an invalid law?

## II.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

A petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law or it may summarily be dismissed. *Perez v. Hemingway,* 157 F. Supp. 2d 790, 796 (E.D. Mich. 2001). Federal courts are also authorized to dismiss any habeas petition that appears legally insufficient on its face. *McFarland v. Scott,* 512 U.S. 849, 856 (1994). A federal district court is authorized to summarily dismiss a habeas corpus petition if it plainly appears from the face of the petition or the exhibits that are

attached to it that the petitioner is not entitled to federal habeas relief. *See Carson v. Burke,* 178 F.3d 434, 436 (6th Cir. 1999); Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. § 2254. After undertaking the review required by Rule 4, this Court concludes, for reasons stated in greater detail below, that petitioner's habeas claims are meritless, such that the petition must be summarily dismissed. *See Robinson v. Jackson,* ---- F. Supp. 2d----; 2005 WL 988865, *1 (E.D. Mich. April 20, 2005).

The Court notes that petitioner acknowledges that he has failed to exhaust his state court remedies with respect to his claims. If an unexhausted federal constitutional claim is plainly meritless, it does not offend federal-state comity to address the merits of those claims. *See Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1239 (E.D. Mich. 1993). Because petitioner's claims are patently meritless, the Court will address the merits of these claims rather than require petitioner to return to state court to exhaust these issues. No return to a state court for exhaustion is necessary if the petition is frivolous, or obviously lacks merit, or if the necessary facts can be determined from the petition itself without a return to the state. *Allen v. Perini,* 424 F.2d 134, 141 (6th Cir. 1970).

### III. Discussion

**A. The jurisdictional claim**

In his first claim, petitioner contends that the Michigan courts lacked jurisdiction to try him for the crimes for which he was convicted, because he is a member of the "Amurru Washitaw de Dugdahmoundyah Nation," and, as an indigenous person, could only be tried in federal court. The Sixth Circuit has recognized the "Nation of Washitaw" as a fictional

entity, whose members call themselves "freemen" who consider themselves not bound by the laws of the states. *Bybee v. City of Paducah,* 46 Fed. Appx. 735, 736 (6th Cir. 2002).[1]

In the present case, the trial court judge who presided over petitioner's criminal case rejected this claim in petitioner's first state habeas petition, finding that petitioner was a "lifelong citizen of the United States who committed murder in the State of Michigan, County of Wayne" and further finding that the state court had jurisdiction under Michigan law to try petitioner for these crimes. *See Harris v. Warden of Mound Correctional Facility,* 96-000998, Slip. Op. at *1 (citing Mich. Const. Art. 6, § 13 and M.C.L.A. 600.601).

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir. 1976). Petitioner's claim that the state trial court lacked jurisdiction to try his case raises an issue of state law, because it questions the interpretation of Michigan law, and is therefore not cognizable in federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill,* 152 F. Supp.2d 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23 Fed. Appx. 259, 266 (6th Cir. 2001)(district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).

---

[1] While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber,* 208 F.3d 545, 551, n. 3 (6th Cir. 2000).

Petitioner's related claim that the state court lacked jurisdiction over his criminal case because he is member of the Washitaw Nation is frivolous. *See United States v. Gunwall,* 156 F.3d 1245 (Table), 1998 WL 482787 at *3 (10th Cir. Aug. 12, 1998) (defendant's jurisdictional challenges based on his membership in a sovereignty known as "Washitaw de Dugdahmoundyah" is frivolous); *see also Wilson v. Art Van Furniture,* 230 F.3d 1358 (Table), 2000 WL 1434690, *1 (6th Cir. Sept.19, 2000)(affirming summary judgment against plaintiff on employment discrimination claim based upon his membership in the Washitaw de Dugdahmoundyah Empire, finding that plaintiff presented no credible proof that there is or ever was a country or ethnic group known as the Washitaw de Dugdahmoundyah Empire).  Other courts have rejected similar jurisdictional claims as being frivolous. *See e.g. Kerr v. Hedrick,* 89 Fed. Appx. 962, 963 (6th Cir. 2004)(rejecting petitioner's claim that he was exempt from punishment for his federal crimes because his rights derive exclusively from the Moorish Science Temple of America); *Frazier-El v. United States,* 2002 WL 32356686, *2 (D. Md. June 17, 2002)(petitioner's claim that the federal district court lacked jurisdiction over his criminal case because he was a member of the Moorish Science Temple was frivolous and completely devoid of merit)*; United States v. Williams,* 532 F. Supp. 319, 320 (D.N.J. 1981)(rejecting claim that federal government lacked jurisdiction to prosecute defendant who claimed to be a citizen of the "Republic of New Afrika", finding that this was not a sovereign nation recognized by the United States, but was, at most, a black separatist movement).

This Court concludes that petitioner's claim that the Michigan courts lacked

7

jurisdiction to prosecute him because he is a member of the "Washitaw Nation" is wholly frivolous and devoid of merit. Accordingly, petitioner is not entitled to habeas relief on his first claim.

### B. The indeterminate sentencing claim

Petitioner next claims that his sentence of life imprisonment without parole for his first-degree murder conviction and his sentence of parolable life for second-degree murder are invalid, because there is no grant of authority for the Michigan legislature to enact determinate sentences, claiming that pursuant to Art. 4, § 5 of the Michigan Constitution, the Michigan Legislature only has the authority to enact indeterminate sentences, that is, sentences with a minimum and maximum sentence.

A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the cruel and unusual punishment clause of the Eighth Amendment. *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1075 (E.D. Mich. 2000).

In the present case, Michigan's first-degree murder statute authorizes a mandatory, non-parolable life sentence. Michigan's second-degree murder statute authorizes a sentence of any term of years up to life in prison. Petitioner's sentences were within the

statutory maximum for these crimes. Pursuant to M.C.L.A. 769.9(1), the Michigan Legislature has determined that the provisions of Michigan's indeterminate sentencing statute shall not apply to mandatory life offenses. Pursuant to M.C.L.A. 769.9(2), if the maximum sentence for a crime may be a term of years or life imprisonment, the court may impose a life sentence.

In *People v. Snider,* 239 Mich. App. 393, 426; 608 N.W. 2d 502 (2000), the Michigan Court of Appeals held that a sentence of life in prison without the possibility of parole for the crime of first-degree murder did not violate Art. 4, § 5 of the Michigan Constitution. The Michigan Court of Appeals noted that although Art. 4, § 5 of the Michigan Constitution authorized indeterminate sentencing, this provision contained no prohibition against a statute which required determinate sentencing as a punishment for a crime. *Id.* There is nothing in the Michigan Constitution that requires indeterminate sentencing for particular crimes, such as first-degree murder. *Id.* at 427. Because petitioner's sentences are authorized by Michigan law, he is not entitled to habeas relief on his second claim.

    **C.**    **The claim that the judge, the prosecutor, and defense counsel were not licensed to practice law**

In his third claim, petitioner contends that the trial court judge, prosecutor, and his defense counsel were not licensed to practice law in Michigan, because there is no authority under Michigan law to grant licenses to lawyers. Petitioner points out that other licenses for professionals are governed by a specific state board, such as the Board of Medical Examiners for doctors, but that no such independent board exists for granting

licenses for attorneys in Michigan.

As an initial matter, this Court lacks the jurisdiction to independently review the status of the law licenses of the trial court judge, the prosecutor, or defense counsel in this case. *See Blanton v. United States,* 94 F.3d 227, 233 (6th Cir. 1996). A lower federal court's lack of jurisdiction to review state court proceedings, particularly in matters involving attorney licensing and discipline, is consistent with the principles of comity and federalism. *Id.* at 234. Apart from certiorari review by the United States Supreme Court, federal courts have no power to review the adjudicative determination by a state court which treats a lawyer as being licensed to practice law. *Id.* In this case, petitioner does not allege that the trial court judge, the prosecutor, or his defense counsel were not considered licensed lawyers by the State Bar of Michigan, the Michigan Supreme Court, or the lower state courts. Because the state courts were treating these individuals as licensed attorneys at the time of petitioner's trial, this Court has no power to reinvestigate the licensure of the trial court judge, the prosecutor, or defense counsel. *Id.* at 235.

Moreover, petitioner's argument is patently meritless. The Sixth Circuit rejected a similar argument in *Sharp v. Ingham County,* 23 Fed. Appx. 496 (6th Cir. 2001), in which the court upheld the summary dismissal of a § 1983 action that raised a similar challenge to the authority of the State Bar of Michigan to issue licenses to attorneys to practice law in Michigan. In *Sharp,* the plaintiff argued that the defendants lacked authority to act as prosecutors or judicial assistants because the Michigan Legislature failed to enact a law that created an agency to license persons to practice law.

In rejecting this argument, the Sixth Circuit noted that the right to practice law in Michigan is a privilege which is granted by the state. *Sharp v. Ingham County,* 23 Fed. Appx. at 498 (citing *Emmons v. Smitt*, 149 F.2d 869, 871 (6th Cir. 1945)). The license to practice law, the continuation of such a license to practice, and the regulation of the practice of law are within the province of the State of Michigan. *Id.* (citing *Saier v. State Bar of Mich.*, 293 F.2d 756, 759 (6th Cir. 1961)). Contrary to the contention of both petitioner and the plaintiff in *Sharp*, the Michigan Legislature has enacted legislation which created an agency to license persons to practice law, by establishing the State Bar of Michigan as a public body, "the membership of which is comprised of all persons licensed to practice law in the state." *Sharp,* 23 Fed. Appx. At 498 (citing M.C.L.A. 600.901). In addition, the Michigan Supreme court has the power to provide for the organization and membership of the State Bar of Michigan. *Id.* (citing M.C.L.A. 600.904). Moreover, the Michigan State Board of Law Examiners is considered a judicial agency of the State of Michigan, which is subject to the supervision of the Michigan Supreme Court. *See Kish v. Michigan State Bd. Of Law Examiners,* 999 F. Supp. 958, 961 (E.D Mich. 1998). At least one other court has denied habeas relief on a similar claim, finding the habeas petitioner's jurisdictional argument based upon the State of Michigan's failure to implement a required attorney licensing procedure to be frivolous. *See Gamez v. Jones,* 1999 WL 33483583, *2 (W.D. Mich. Aug. 9, 1999). [2] Petititioner is therefore not entitled to habeas relief on his

---

[2] Although it is unnecessary for the adjudication of petitioner's claim, this Court notes that the district court in the *Blanton* case held that the Sixth Amendment right to counsel does not require that a defendant be represented by a licensed attorney, but rather by a competent advocate sufficiently learned in the law who is able to, and does, adequately represent the defendant at trial. *Blanton v. United States,* 896 F. Supp. 1451,

third claim.

### D. The enactment clause claim

In his fourth and final claim, which he raises in his supplemental petition, petitioner contends that the State of Michigan lacked jurisdiction over his case, because the laws under which he was prosecuted are invalid because they lack an enactment clause as required by Mich. Const. Art. 4, § 23.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As one court has noted: "[t]he United States Constitution does not require that codification of statutes include enacting clauses and titles of the legislation." *See United States v. Ramanauskas,* 2005 WL 189708 at *2 (D. Minn. Jan. 21, 2005). Moreover, although neither the Michigan Compiled Laws Annotated or the Michigan Statutes Annotated contain the enactment clause for the three offenses that petitioner was convicted of, the enacting clause language was contained in the public acts which enacted and amended the first-degree murder statute, P.A. 1931, No. 328, § 316, P.A. 1994, No. 267, which enacted the second-degree murder statute, P.A. 1931, No. 328, § 317, and which enacted and amended the felony-firearm statute that was in effect at the time of petitioner's conviction. P.A. 1976, No. 6; P.A. 1990, No. 321, § 1. In this case, petitioner's convictions for first-degree murder, second-degree murder, and felony-

---

1460 (M.D. Tenn. 1995). The district court concluded that counsel, for the purposes of the Sixth Amendment, is a function of the advocate's competence, as opposed to his or her position as a state-licensed attorney. *Id.* The Sixth Circuit declined to review that ruling on appeal, because it was unnecessary for the determination of the case. *Blanton v. United States,* 94 F.3d at 235.

firearm under statutes that were published in the Michigan Compiled Laws Annotated or the Michigan Statutes Annotated without an enactment clause did not violate petitioner's due process rights, in light of the fact that each of the laws that he was convicted of was published with an enactment clause in the session laws contained in the various Public Acts of the Michigan Legislature. *See Kautz v. Reid,* 28 Fed. Appx. 770, 771 (10th Cir. 2001); *Stevens v. Colorado,* 18 Fed. Appx. 779, 780 (10th Cir. 2001). Petitioner is not entitled to habeas relief on his final claim.

Finally, the Court will address at this time the issue of whether to issue a certificate of appealability ("COA"). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880 at 893, n.4 (1983)). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court "should limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). This Court has conducted a threshold inquiry into the underlying merits of petitioner's claims. The Court determines that petitioner has not made a substantial showing of the denial of a constitutional right in his claims, as required by 28 U.S.C. § 2253(c)(2). This Court finds that jurists of reason would

not debate the conclusions set forth above. Therefore, petitioner has failed to show that he is entitled to a COA.

## IV. ORDER

Accordingly, the Court will **GRANT** petitioner's motion to supplement his original petition [docket entry 2].

**THE COURT FURTHER DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus [docket entry 1] pursuant to Rule 4 of the Rules Governing § 2254 cases.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** with respect to all issues.

s/Paul V. Gadola
**HON. PAUL V. GADOLA**
**UNITED STATES DISTRICT COURT**

DATED: May 26, 2005

---

Certificate of Service

I hereby certify that on May 31, 2005 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: _____ , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:        Shawn Demean Harris Bey            .

s/Julia L. Delling
Julia L. Delling, Case Manager
(810) 341-7845